THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALONZO GOODLET, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 C 570 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

After Plaintiff Alonzo Goodlet, who is Black, posted a picture of himself holding a gun on social media, he lost his job as a motor truck driver with the City of Chicago Department of Aviation. During his employment, Goodlet alleges his white coworkers used racial slurs, insulted him, excluded him, and lodged false complaints against him. Goodlet brings claims of race and national origin discrimination and intentional infliction of emotional distress. (Dkt. 1). The City of Chicago moves to dismiss certain of Goodlet's claims. (Dkt. 19). For the reasons below, the City's partial motion to dismiss is granted.

## BACKGROUND

Unless otherwise noted, the following factual allegations are taken from Goodlet's Complaint (Dkt. 1) and are assumed true for purposes of the City's motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Goodlet, who is African American and lives in Cook County, Illinois, has worked various jobs for the City of Chicago since 2008. (Dkt. 1 ¶ 3). Most recently, Goodlet worked as a motor truck driver for the Department of Aviation. (*Id.*). On November 7, 2020, while on vacation, Goodlet uploaded a photo of himself on Facebook in which he was holding a gun in the bathroom of a Menards store. (*Id.* at ¶ 5). Goodlet holds a Firearm

1

Owners Identification and a concealed-carry permit. (*Id.*) Nonetheless, Goodlet removed the photo from Facebook shortly after posting it. (*Id.*).

When Goodlet returned to work, Chicago Police Department officers escorted him to the office of his supervisor, Mr. Landers, who is white. (*Id.* at ¶ 6). Landers told Goodlet that he had broken COVID-19 protocols and needed to turn in his city identification and badge. (*Id.* at ¶ 7). Later that day, a human resources representative from the Department of Aviation told Goodlet that the Department was placing him on administrative leave for potentially bringing a gun to work. (*Id.* at ¶ 8). This was the first time during Goodlet's employment with the City that he had been subject to disciplinary proceedings or an employee complaint. (*Id.* at ¶ 16). Because his badge was revoked, Goodlet was unable to work his second job for DHL. (*Id.* at ¶ 17).

Following Goodlet's suspension, the Office of the Inspector General (OIG) investigated the incident. (*Id.* at ¶ 9). The OIG received complaints from five of Goodlet's white colleagues, each of whom had allegedly shown racist tendencies on social media. (*Id.* at ¶¶ 9–13). For example, one complainant's social media posts included an image of the Confederate flag and suggested that he owned a gun. (*Id.* at ¶ 10). A second complainant's profile picture showed him "shooting a firearm and wearing a 'Make America Great Again' hat." (*Id.* at ¶ 11). A third complainant called Goodlet "Hoodratlet" in a text message. (*Id.* at ¶ 12). In addition, Goodlet's other coworkers had shared Facebook posts including racial slurs and white supremacy signs. (*Id.* at ¶ 13). Goodlet's colleagues referred to him as "stupid," "moron," and "idiot" over radio communications and excluded Goodlet from social meetings in the drivers' room. (*Id.* at ¶¶ 14–15). Goodlet was the only driver of color at the Department of Aviation. (*Id.*)

In March 2021, Goodlet returned to his workplace, where Landers helped him to get a new identification badge to use for his DHL job. (*Id.* at ¶ 17). But the badge did not work when Goodlet

tried to use it the next day, and police officers escorted him off the premises. (*Id.*). The OIG completed its investigation and notified Goodlet on September 21, 2021 that his employment was being terminated. (*Id.* at ¶ 18). Goodlet filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (*Id.* at ¶ 19; Dkt. 19-1).[1] In the EEOC charge, Goodlet provided the dates of his suspension and termination, checked the box indicating he suffered race discrimination, and stated: "I believe I have been discriminated against because of my race, Black, in violation of Title VII." (Dkt. 19-1). The EEOC sent Goodlet a notice of his right to sue on November 1, 2021. (Dkt. 1 ¶ 19; Dkt. 1-1).

Goodlet filed suit against the Department of Aviation, alleging race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866 (Count I); and intentional infliction of emotional distress (IIED) (Count II). (Dkt. 1 at 6–7). The City moves, without opposition, to replace the Department of Aviation as the Defendant, since the Department of Aviation is not a suable entity. (Dkt. 19 at 3–4; Dkt. 25 at 2). That motion is granted. The City also moves to dismiss, arguing that Goodlet (1) failed to exhaust his administrative remedies on the Title VII national origin discrimination claim; (2) failed to state a Section 1981 discrimination claim; and (3) failed to state an IIED claim. (Dkt. 19).

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown*

---

[1] Goodlet did not attach his EEOC charge to his Complaint, but the Court may consider the charge since it is critical to the Complaint, and even if it was not, it is a public record. *See Dean v. Nat'l Production Workers Union Severance Tr. Plan*, 46 F.4th 535, 543 (7th Cir. 2022); *see also, e.g.*, *Williams v. City of Chicago*, 2022 WL 2915632, at *3 n.2 (N.D. Ill. July 25, 2022).

*Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend. Mut. Ins.*, 844 F.3d at 675). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Kaminski*, 23 F.4th at 776 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

I.     **Discrimination and *Monell* Liability (Count I)**

In Count I, Goodlet alleges race and national origin discrimination in violation of Title VII and Section 1981. (Dkt. 1 ¶¶ 20).

      A.     **Failure to Exhaust Title VII National Origin Discrimination Claim**

Initially, the City argues that Goodlet has failed to exhaust his national origin discrimination claim under Title VII and requests dismissal of the claim with prejudice. (Dkt. 19 at 9–11; Dkt. 28 at 9). Goodlet "does not object" but seeks leave to amend. (Dkt. 25 at 2). A district court should give leave to amend freely "when justice so requires," Fed. R. Civ. P. 15(a)(2), but "may deny leave to amend if amendment would be futile." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022).

Before suing under Title VII, Goodlet was required to file an EEOC charge within 300 days "after the alleged unlawful employment practice occurred." *Palmer v. Ind. Univ.*, 31 F.4th

583, 588 (7th Cir. 2022) (quoting 42 U.S.C. § 2000e-5(e)(1)). Further, Goodlet's claims in this action are limited to those "like or reasonably related to the allegations of the charge and growing out of the allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)); *see also Bilal v. Rotec Indus., Inc.*, 326 F. App'x 949, 953 (7th Cir. 2009) (citing *Jenkins Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976) (en banc)) (explaining that courts "look to the substance of the charges, not merely whether a particular box was checked on the EEOC form"). The exhaustion requirement serves two purposes: (1) giving the EEOC and the employer a chance to settle the matter; and (2) giving the employer notice of the challenged conduct. *Chaidez*, 937 F.3d at 1004 (citing *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009)). At a minimum, the charge and the complaint must "describe the *same conduct* and implicate the *same individuals*." *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). In comparing Goodlet's EEOC charge with his Complaint, the Court "read[s] the claims in the EEOC charge liberally," since Goodlet submitted the charge without legal representation. *Chaidez*, 937 F.3d at 1005 n.3.

Goodlet's EEOC charge complained only of race discrimination, stating: "I believe I have been discriminated against because of my race, Black, in violation of Title VII." (Dkt. 19-1). In general, claims of national origin discrimination do not relate to or grow out of claims based on race.[2] Of course, Goodlet's failure to check the "national origin" box would not be fatal if his

---

[2] *See, e.g.*, *Johnson v. Joliet Junior Coll.*, 2009 WL 674357, at *3 (N.D. Ill. Mar. 13, 2009) (reasoning that "a claim of national origin discrimination may also substantiate a claim for racial discrimination," but "the reverse is not true" (citing *Abdullahi v. Prada U.S.A. Corp.*, 520 F.3d 710, 735–36 (7th Cir. 2008)); *Baker v. Ind. Fam. & Soc. Servs. Admin.*, 260 F. Supp. 2d 731, 735 (S.D. Ind. 2003) ("[T]he term 'Black' does not encompass national origin nor would it reasonably provide the EEOC with a sufficient basis to initiate an investigation of a national origin discrimination." (citing *Torres v. City of Chicago*, 2000 WL 549588, at *2 (N.D. Ill. May 1, 2000)); *Thompson v. Fairmont Chi. Hotel*, 525 F. Supp. 2d 984, 989 (N.D. Ill. 2007) ("Other courts have previously concluded that discrimination on the basis of color is not reasonably related to discrimination on the basis of race." (citing *Sullivan v. Presstronics, Inc.*, 1997 WL 327126, at *2 (N.D.Ill. Aug. 31, 2004)); *Carrillo v. Ill. Bell Telephone Co.*, 538 F. Supp. 793, 797–98 (N.D. Ill. 1982) (national origin discrimination complaint in EEOC charge did not exhaust race discrimination claim).

5

allegations had "clearly intended the EEOC to investigate" national origin discrimination. *See, e.g.*, *Alicea v. City of Chicago*, 2002 WL 1021553, at *3 (N.D. Ill. May 20, 2002) (quoting *Cheek*, 31 F.3d at 502). But the sparse allegations in Goodlet's charge do not suggest any such intent. Nor would Goodlet's EEOC charge have put the City on notice of a national origin discrimination claim, since the words "race" and "Black" do not hint at discrimination relating to Goodlet's national origin. *See Chaidez*, 937 F.3d at 1004; *Johnson*, 2009 WL 674357, at *3.

Considering the 300-day deadline to file an EEOC charge, it is too late for Goodlet to file a new charge based on national origin discrimination. Under these circumstances, amendment would be futile. Accordingly, Goodlet's Title VII national origin discrimination claim is dismissed with prejudice.

**B.     Section 1981**

The City also challenges the sufficiency of Goodlet's Section 1981 claim. (Dkt. 19 at 11–13). Section 1983 provides "the exclusive remedy" for Section 1981 claims against state actors. *Campbell v. Forest Pres. Dist. of Cook Cnty.*, 752 F.3d 665; 671 (7th Cir. 2014); *see also Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 966 (explaining that Section 1981 "does not create a private right of action against public bodies unless the plaintiff has raised *Monell* allegations"). To state a claim under Section 1983, a plaintiff must allege that a municipality's "policy, custom, or act by a final decisionmaker caused him to suffer a constitutional injury" or discrimination. *Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 966 (7th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694–95 (1978), and *Campbell*, 752 F.3d at 667, 669).

Surviving dismissal under Rule 12(b)(6) requires allegations that go beyond isolated incidents: While a plaintiff need not provide examples of "every other or even one other

individual" who suffered due to a policy or practice, *White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016), he must "plausibly allege that such examples exist." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Goodlet fails to do so. Goodlet's Complaint alleges that the City "has demonstrated a history of targeting minority employees." (Dkt. 1 ¶ 27). But this vague allegation does not give rise to a plausible inference that the City maintained a discriminatory policy or practice.[3] Indeed, the Complaint is devoid of any factual allegations permitting such an inference. Goodlet has therefore failed to state a Section 1983 claim.

## II.    IIED (Count II)

In Count II, Goodlet alleges that the City intended to inflict severe emotional distress on him, citing his coworkers' racially abusive treatment and baseless complaints. (Dkt. 1 at ¶¶ 31–35). The City argues that Goodlet's IIED claim (1) is preempted by the Illinois Human Rights Act (IHRA); and (2) fails to state a claim. Since the Court agrees with both arguments, it does not reach the City's affirmative defense that the IIED claim is time-barred.

### A.    IHRA Preemption

The City argues that Goodlet's IIED claim is preempted by the Illinois Human Rights Act (IHRA), which grants the Illinois Human Rights Commission exclusive jurisdiction over civil rights violations. 775 ILCS 5/8-111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). Civil rights violations under the IHRA include acting "with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship,

---

[3] In his response opposing the City's motion to dismiss, Goodlet argues: "The Board here, with a final policymaking authority instilled [a] policy of discrimination[.] Plaintiff is not the only African American being discriminated and City data reflects this." (Dkt. 25 at 13). Even if the Court could consider these assertions, they would not move the needle. *See Barwin v. Village of Oak Park*, 54 F.4th 443, 455 n.12 (7th Cir. 2022) (noting that courts evaluating motions to dismiss are "confined to the four corners of the complaint"). Goodlet does not point to any particular data, and his statements are otherwise conclusory.

7

discharge, discipline, tenure or terms, [or] privileges or conditions of employment on the basis of unlawful discrimination . . . ." 775 ILCS 5/2-102(A). Unlawful discrimination includes race discrimination. 775 ILCS 5/1-103(Q).

The IHRA "preempts all other state-law claims that are 'inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself.'" *Doe v. Toys R Us*, 2010 WL 3168299, at *4 (N.D. Ill. Aug. 5, 2010) (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997)); *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017). Tort claims are not inextricably linked with a civil rights violation "where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act." *Maksimovic*, 687 N.E.2d at 24; *Nischan*, 865 F.3d at 934.

IHRA preemption does not turn on whether the same facts supporting the IIED claim also support an employment discrimination claim. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006); *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009). Rather, "the concrete question to ask is whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the [IHRA]." *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017); *see also Nischan*, 865 F.3d at 934 (affirming IHRA preemption where taking "the civil rights allegations out of the complaint" would leave the complaint without an IIED claim). Notably, the plaintiff need not bring an IHRA claim for preemption to apply. *See, e.g.*, *Geise v. Phoenix Co. of Chi., Inc.*, 639 N.E.2d 1273, 1276–78 (Ill. 1994); *Richards*, 869 F.3d at 566 n.4.

Goodlet cannot sustain his IIED claim independent of the City's duties under the IHRA. According to the doctrine of respondeat superior, an employer is only liable for its employees' torts "committed within the scope of employment." *Richards*, 869 F.3d at 565 (quoting *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016)); *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill.

8

1989). In assessing whether an employee's conduct is within the scope of his or her employment, Illinois courts consider whether the conduct "(1) is of the kind the employee is employed to perform; (2) occurs substantially within the authorized time and space limits; and (3) is actuated, at least in part, by a purpose to serve the master." *Richards*, 869 F.3d at 565 (quoting Restatement (Second) of Agency § 228 (1958)); *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 992 (Ill. 2007). Thus, an employer cannot be liable for an employee's acts that did not benefit the employer. *Richards*, 869 F.3d at 565 (citing *Boston*, 816 F.3d at 467).

Goodlet's IIED claim is based on his coworkers' "incendiary racial slurs and offensive insults" along with "racially abusive treatment" and "baseless complaints." (Dkt. 1 ¶¶ 33–35). But Goodlet's Complaint is missing allegations suggesting that his coworkers' misconduct aimed to benefit the City—even in part. *Cf. Richards*, 869 F.3d at 565–66 (citing *Doe ex rel. Doe v. Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 61 (Ill. App. Ct. 2012)) (explaining that an employee's sexual misconduct is not within the scope of employment since it does not benefit the employer). The misconduct by Goodlet's coworkers underlying his IIED claim went beyond the scope of their employment. So Goodlet cannot state an IIED claim without relying on the legal duties which the IHRA imposes. *Id.* at 564. IHRA preemption necessarily follows.

B.  **Failure to State a Claim**

Preemption and respondeat superior aside, Goodlet's IIED claim further fails to allege the "extreme and outrageous" element. To state a claim for IIED, a plaintiff must allege that "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards*, 869 F.3d at 566 (citing *Feltmeier*, 798 N.E.2d at 80). "[T]he nature of the

9

defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* (quoting *Feltmeier*, 798 N.E.2d at 83). In the employment context, recovery is limited further to situations where "the employer's conduct has been truly egregious" since "personality conflicts and questioning of job performance are unavoidable aspects of employment" which often "produce concern and distress." *Id.* at 567 (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567–68 (7th Cir. 1997)). Accordingly, workplace conduct does not rise to the level of extreme and outrageous unless the "employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Id.* (quoting *Naeem*, 444 F.3d at 605).

Goodlet alleges his coworkers used racial slurs and insults, excluded him based on his race, and lodged false complaints against him. While these allegations are disturbing, they cannot overcome the high hurdle of the extreme-and-outrageous standard. *See, e.g.*, *Bannon v. Univ. of Chicago*, 503 F.3d 623, 626, 630 (7th Cir. 2007) (supervisor's use of racial epithets against plaintiff for many years and excluding her from meetings was not extreme and outrageous); *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 807–08 (N.D. Ill. 2011) (plaintiff's allegations that coworkers used racial slurs in his presence, spread false rumors about him, and gossiped about his mental health were not extreme and outrageous); *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012) (dismissing IIED claim because supervisor's use of racial, ethnic, and religious slurs "amount to a complaint that [his supervisor] verbally insulted him"). Goodlet correctly points out that the Court can "consider whether the defendant knew that the plaintiff was particularly susceptible to emotional distress." *Cairel v. Alderden*, 821 F.3d 823, 836 (7th Cir. 2016); *McGrath v. Fahey*, 533 N.E.2d 806, 811 (Ill. 1988). But Goodlet's Complaint does not

10

contain facts evincing his heightened susceptibility or his coworkers' knowledge of that susceptibility. Thus, Goodlet's IIED claim fails.

## CONCLUSION

For the reasons above, the City's partial motion to dismiss [19] is granted. The Court dismisses the Department of Aviation and directs the Clerk of Court to amend the case caption to reflect that the City of Chicago is the sole Defendant. As to Count I, Goodlet's Section 1981 claim is dismissed without prejudice, while his Title VII national origin discrimination claim is dismissed with prejudice. Count II is dismissed without prejudice. Goodlet may file an amended complaint by April 4, 2023.

Date: March 14, 2023

_____
Virginia M. Kendall
United States District Judge

11