IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALONZO GOODLET,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>    Defendant. | Case No. 22 C 570<br><br>Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Alonzo Goodlet initiated this action against his former employer, the City of Chicago Department of Aviation ("DOA"), for claims of race and national origin discrimination and intentional infliction of emotional distress. The previously assigned district judge entered an order substituting the City of Chicago as the proper defendant, dismissing the 42 U.S.C. § 1981 and IIED claims without prejudice, and dismissing the Title VII national origin discrimination claim with prejudice. *See* Mem. Op. and Order dated 3/14/23, Dkt. 34.[1] Thereafter, Plaintiff filed a First Amended Complaint ("FAC") (Dkt. 37), alleging discrimination based on race and ethnicity under Title VII (Count I) and discrimination based on national origin, race, religion, and color in violation of the Illinois Human Rights Act ("IHRA") (Count II). Defendant City of Chicago moved to dismiss the ethnicity-based discrimination claim in Count I, all IHRA claims in Count II, and any additional claims of retaliation, due process violations, and Section 1981 discrimination, as well as Plaintiff's request for punitive damages. For the reasons discussed below, Defendant's motion (Dkt. 46) is granted in its entirety.

---

[1] This case was reassigned to Judge Hunt on June 2, 2023 (Dkt. 51).

1

**BACKGROUND**

A.    **Procedural History**

Plaintiff filed his original complaint (Dkt. 1) in January 2022, alleging that he was fired because of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* and Section 1981 of the Civil Rights Act of 1866 (Count I), and subjected to racially abusive treatment from co-workers that was intended to inflict severe emotional distress on him (Count II). Defendant prevailed on its motion for partial dismissal (Dkt. 19). Judge Kendall found the Title VII national origin discrimination claim was unexhausted; the Section 1981 claim failed to allege that Defendant maintained a discriminatory policy or practice; and the IIED claim was preempted by the IHRA and insufficiently pled. (Dkt. 34). In response, Plaintiff filed the FAC, which is now the subject of Defendant's current motion to dismiss.

B.    **Factual Allegations**

The Court assumes familiarity with the March 2023 opinion (Dkt. 34) which includes a detailed recitation of the relevant facts, which are nearly identical in the FAC and original complaint. Briefly, Plaintiff is an African American male who was employed by the DOA as a motor truck driver. In November 2020, Plaintiff uploaded a photo of himself on Facebook holding a weapon in the bathroom of a Menards store. Upon returning to work, Plaintiff was placed on administrative leave for potentially bringing a gun to work. During his suspension, the Office of the Inspector General ("OIG") launched an investigation, and five complainants, all white males that Plaintiff described as racist, participated. Plaintiff accused his co-workers of using derogatory slurs and treating him poorly at work. In September 2021, after the OIG completed its investigation, Plaintiff was terminated. He later filed a charge of discrimination with the EEOC and received a right to sue letter in November 2021. (FAC, Ex. A, Dkt. 37-1).

Plaintiff filed the FAC in April 2023 seeking relief under Title VII (Count I) and the IHRA (Count II). However, Plaintiff does not include allegations in the FAC about any Illinois Department of Human Rights proceedings.

## **LEGAL STANDARD**

Rule 12(b)(6) permits a party to move for dismissal based on the opposing party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). While ruling on a motion to dismiss for failure to state a claim, a court may generally consider only the plaintiff's complaint, exhibits to the complaint, matters central to the plaintiff's claim and incorporated into the complaint by reference, and items subject to judicial notice. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

**DISCUSSION**

Plaintiff contends that the DOA terminated him in violation of Title VII and the IHRA. Defendant argues that these claims, except for the Title VII race discrimination claim, are legally insufficient and must be dismissed for several reasons: (1) Plaintiff's Title VII ethnicity claim was not included in his EEOC charge; (2) Plaintiff failed to exhaust his administrative remedies before the IDHR and certain aspects of his claim are beyond the scope of the charge; (3) any allegations attempting to assert separate causes of action for retaliation, due process violations, or Section 1981 violations fail to state a claim; and (4) Plaintiff's punitive damages request is improper. Having considered the pleadings and the arguments of the parties, the Court agrees with Defendant.

**I.     Title VII (Count I)**

Count I of the FAC purports to state a claim for race and ethnicity discrimination in violation of Title VII. Before bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). After doing so, a plaintiff filing suit in federal court may bring only those claims that were included in his EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations. *Id.* (citing *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)). This requirement has two purposes: first, it allows the EEOC and the employer an opportunity to settle the matter, and second, it ensures that the employer has adequate notice of the conduct the employee is challenging. *Chaidez*, 937 F.3d at 1004 (citing *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009)).

Here, Defendant argues that Plaintiff's ethnicity-based discrimination claim should be dismissed because it was not included in Plaintiff's EEOC charge and it is not reasonably related

to his race discrimination claim. Plaintiff asserts that his ethnicity claim should be allowed to proceed because it is "intertwined" with his race claim. (Pl.'s Resp. at 4).

As Judge Kendall previously noted, Plaintiff's "EEOC charge complained only of race discrimination, stating: 'I believe I have been discriminated against because of my race, Black, in violation of Title VII.'" (Dkt. 34 at 5) (quoting Dkt. 19-1).[2] However, because Plaintiff submitted the EEOC charge without legal representation, the Court must read the claims liberally. *Chaidez*, 937 F.3d at 1005 n.3. But even a liberal reading shows that Plaintiff failed to raise a claim of ethnicity discrimination in his EEOC charge.

As Defendant points out, EEOC guidance treats ethnicity as national origin discrimination. (*See* Def.'s Reply at 5) (citing Equal Employment Opportunity Commission, EEOC Enforcement Guidance on National Origin Discrimination, https://www.eeoc.gov/laws/guidance/eeoc-enforcement-guidance-national-origin-discrimination) ("Employment discrimination against members of a national origin group includes discrimination based on . . . Ethnicity[.]").[3] Notably, Judge Kendall already determined that Plaintiff failed to exhaust his national origin discrimination claim. She concluded that Plaintiff's EEOC charge did not put Defendant on notice of such of claim because Plaintiff failed to check the national origin box on the charge form and the sparse

---

[2] Plaintiff alleges that he filed a complaint with the EEOC and attached a copy of his right to sue letter to the FAC. Defendant then attached a copy of Plaintiff's EEOC charge to its motion to dismiss. Courts can take judicial notice of a public record without converting a motion to dismiss into a motion for summary judgment when the record is referred to in the plaintiff's complaint and central to his case. *Obazuaye v. Ill. Dep't of Hum. Servs.*, No. 21 C 3132, 2021 WL 5204700, at *2 (N.D. Ill. Nov. 9, 2021). Accordingly, the Court takes judicial notice of Plaintiff's EEOC charge and the corresponding right to sue letter.

[3] "District courts can take judicial notice of information on government websites." *Bartnett v. Abbott Lab'ys*, 492 F. Supp. 3d 787, 798 (N.D. Ill. 2020) (citing *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003)).

allegations did not suggest any intent for the EEOC to investigate national origin discrimination. (Dkt. 34 at 5-6).

Despite that clear rejection of his position, Plaintiff nonetheless argues that "a particular national origin can be reasonably understood to indicate a particular race or color." (Pl.'s Resp. at 4). The Court disagrees. Plaintiff points to two cases in support, but neither establishes that ethnicity and race claims are related. (Pl.'s Resp. at 5) (citing *Lapine v. Edward Marshall Boehm, Inc.*, No. 89 C 8420, 1990 WL 43572 (N.D. Ill. Mar. 28, 1990); *Torres v. City of Chi.*, No. 99 C 6622, 2000 WL 549588, at *2 (N.D. Ill. May 1, 2000)).

In *Lapine*, the court found that the plaintiff's claim for religious discrimination based on her status as a Jew was sufficient to state a claim. 1990 WL 43572, at *5. However, as to her national origin discrimination claim, it ruled the opposite, reasoning that "stating that one is Jewish gives no indication of that individual's country of origin. Nor does it indicate the country of origin of one's ancestors or suggest the physical or cultural characteristics of a national origin group." *Id*. The same holds true here. Plaintiff's identification as Black does not give any indication of his ethnicity, country of origin, the country of origin of his ancestors, or his physical or cultural characteristics.

In *Torres*, the plaintiffs asserted claims for race and national origin discrimination although their EEOC charges indicated that the discrimination was based on national origin only. 2000 WL 549588, at *2. In finding that the race discrimination claims were included in the charge, the court explained that "Hispanic" technically denotes an ethnic origin, but the term is also often used as a racial classification. *Id*. Plaintiff conveniently overlooks the remainder of the analysis, however, where the court explained that "the term 'Hispanic' is unique, encompassing the concepts of both race and national origin in a way that the terms 'white,' 'black' and 'Asian' do not." *Id*. (citing

6

*Alonzo v. Chase Manhattan Bank, N.A.*, 25 F.Supp.2d 455, 459 (S.D.N.Y. 1998)). Plaintiff has not offered any legal authority or other basis to conclude that the term "Black," as used in his EEOC charge, is unique in the same way that the *Torres* court considered the term "Hispanic" to be unique.

Furthermore, Plaintiff does not attempt to refute Judge Kendall's prior finding that "claims of national origin discrimination do not relate to or grow out of claims based on race." (Dkt. 34 at 5) (collecting cases). Because ethnicity and national origin are one in the same, Plaintiff cannot repackage the previously dismissed national origin discrimination claim as one for ethnicity discrimination. Accordingly, the Title VII ethnicity discrimination claim in Count I is dismissed with prejudice.[4]

## II.    Illinois Human Rights Act (Count II)

Count II of the FAC purports to state claims for national origin, race, religion, and color discrimination in violation of the IHRA. Defendant argues that Plaintiff's claim should be dismissed because (1) Plaintiff failed to exhaust his administrative remedies under the IHRA; (2) Plaintiff's allegations of retaliation and national origin and religious discrimination are outside the scope of his IDHR charge; and (3) Plaintiff failed to allege that he engaged in a statutorily protected activity prior to the alleged adverse action. The Court addresses each argument in turn.

### A.    Exhaustion

The IHRA requires a complainant to exhaust administrative remedies as a prerequisite to filing a civil lawsuit. *Baranowska v. Intertek Testing Servs. NA, Inc.*, No. 19 C 6844, 2020 WL

---

[4] Plaintiff's claim is dismissed with prejudice because it is too late for Plaintiff to file a new charge based on ethnicity discrimination. *See Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) ("To bring a Title VII claim, a plaintiff must file an EEOC charge within 300 days of the conduct underlying the claim.").

1701860, at *2 (N.D. Ill. Apr. 8, 2020) (citing *Hankins v. Best Buy Co.*, No. 10 C 4508, 2011 WL 6016233, at *5 (N.D. Ill. Dec. 2, 2011)). A complainant may commence a civil action only after (1) the IDHR issues a final report, (2) the IDHR fails to issue a report within 365 days after the complainant files a charge, or (3) the complainant "opts out" of the IDHR investigation by submitting a written request within sixty days of receiving notice that he has the right to opt out. *Bakhtiari v. Doe*, No. 22 C 2406, 2023 WL 415548, at *4 (N.D. Ill. Jan. 25, 2023) (citing *Baranowska*, 2020 WL 1701860, at *3).

Here, Plaintiff's charge of discrimination was received by the IDHR in November 2021.[5] (Def.'s Mem., Ex. A, Dkt. 47-1). In June 2022, the IDHR administratively dismissed Plaintiff's charge and ceased its investigation because Plaintiff had initiated this federal court litigation in February 2022. (Def.'s Mem., Ex. B, Dkt. 47-1). Defendant argues that in light of the administrative dismissal, Plaintiff's IHRA claim is not exhausted and therefore must be dismissed. Plaintiff disagrees, insisting that he timely filed the FAC in April 2023 after receiving the IDHR dismissal letter. (Pl.'s Resp. at 3). But Plaintiff misconstrues the effect of the administrative dismissal.

"The IHRA allows the [IDHR] to administratively close a charge 'if the issues which are the basis of the charge are being litigated in a [s]tate or federal court proceeding.'" *Falco v. Off. Elecs., Inc.*, No. 97 C 4170, 1997 WL 587660, at *2 (N.D. Ill. Sept. 17, 1997) (quoting 775 ILCS 5/7-109.1). The administrative closing of a charge by the IDHR, however, is not a final order, nor does it constitute an exhaustion of administrative remedies. *Falco,* 1997 WL 587660, at *2. "A plaintiff cannot file suit in federal court and then, when the IDHR closes her charge precisely

---

[5] As with the EEOC charge, the Court may take judicial notice of the IHDR records submitted by Defendant in support of its motion to dismiss. *See Anderson v. Ctrs. for New Horizons, Inc.*, 891 F. Supp. 2d 956, 959 (N.D. Ill. 2012). That is particularly appropriate here where Plaintiff amended his complaint to include claims under the IHRA but failed to allege that he filed a charge before the IDHR, let alone that he received a right to sue letter.

*because* she filed suit in federal court, argue that she has exhausted all administrative remedies." *Id.*

That is the exact situation here. Plaintiff raised the identical issue in separate charges filed before the IDHR and the EEOC: "I believe I have been discriminated against because of my race, Black, in violation of Title VII." (Def.'s Mem., Ex. A, Dkt. 47-1). The IDHR charge was recieved in November 2021. Plaintiff sued Defendant for race discrimination (citing the EEOC charge) in this court in January 2022. The IDHR subsequently sent him a letter in June 2022 indicating that it had "ceased its investigation and the charge filed in this matter is Administratively Dismissed because . . . Charging party has initiated litigation . . . in a [s]tate or federal court." (Def.'s Mem., Ex. B, Dkt. 47-1). Allowing Plaintiff to rely on the administrative dismissal order to establish that he exhausted his administrative remedies "would be inconsistent with the comprehensive scheme of remedies and procedural processes established by the IHRA." *Falco,* 1997 WL 587660, at *2. Because the administrative dismissal letter is not a final order, Plaintiff has failed to exhaust his IDHR claim. *See Ibrahim v. Holidays Inn, Inc.*, No. 95 C 4316, 1996 WL 199743, at *6 (N.D. Ill. Apr. 23, 1996).

Moreover, Defendant is correct that even if Plaintiff had properly exhausted those claims, at this point, they are barred because Plaintiff failed to timely file suit after the June 29, 2022 order of dismissal. Indeed, the letter from the IDHR pointed out that Plaintiff had until July 26, 2022, to request review by the Illinois Human Rights Commission. Alternatively, Plaintiff could have commenced a civil action on the IHRA claims in an appropriate court within 90 days, or by late September 2022. *See* 775 ILCS 5/7A-102(D)(3) & (D)(4). But he did not file the FAC containing the IDHR claims until April 2023, and by then, it was too late.

9

Plaintiff insists that he had a year after the IDHR dismissal—until June 2023—to file suit, and thus the FAC filing was timely. But 775 ILCS § 5/7-102(G) provides that "[i]f the Department has not issued its report within 365 days after the charge is filed, or any such longer period agreed to in writing by all the parties, the complainant shall have 90 days to either file the complainant's own complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court." Plaintiff interprets that language as giving him an additional year from the June 2022 administrative dismissal to sue, but that is clearly an erroneous reading of the statute.

Accordingly, the IHRA claims in Count II are dismissed with prejudice.[6] Nevertheless, for the sake of completeness, the Court considers Defendant's other arguments.

B.  **Claims Beyond the Scope of IDHR Charge**

Generally, an aggrieved employee cannot bring claims in federal court that were not included in an IDHR charge. *Flores v. Bd. of Trustees of Cmty. Coll. Dist. No.* 508, 103 F. Supp. 3d 943, 949-50 (N.D. Ill. 2015). Where a party does not include claims in an IDHR charge, the question is whether the claims could have been expected to grow out of the IDHR charge. *Id.* Here, Defendant argues that Plaintiff's retaliation[7] and national origin and religious discrimination claims are beyond the scope of his IDHR charge, a contention Plaintiff fails to address in his response.

Reviewing the IDHR charge, Plaintiff did not select the national origin, religion, or retaliation boxes on the form. Of course, simple technicalities such as which boxes are checked do

---

[6] Generally, the proper resolution for failing to exhaust administrative remedies is dismissal without prejudice. *See Teal*, 559 F.3d at 693. However, as with Plaintiff's EEOC charge, it is too late for Plaintiff to file an amended or additional IDHR charge based on the conduct at issue in this case. 775 ILCS 5/7A-102 (A)(1) ("Within 300 calendar days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department. . .").

[7] The title of Count II does not reference retaliation; however, within Count II, Plaintiff alleges "[t]his retaliation for asserting his right to be free from discrimination on account of race, and/or color. . ." (FAC ¶ 33).

10

not necessarily control the scope of a subsequent complaint. *Flores*, 103 F. Supp. 3d at 950 (citing *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 259 (7th Cir. 1996)). Still, it is clear to the Court that Plaintiff's claims of national origin discrimination, religious discrimination, and retaliation are well outside the scope of the IDHR charge. As already discussed, Plaintiff's IDHR charge is identical to his EEOC Charge and references race discrimination only. Retaliation and national origin and religious discrimination claims could not have been expected to grow out of these barebones allegations. *See McQueen v. City of Chi.*, 803 F. Supp. 2d 892, 902 (N.D. Ill. 2011) (Simple or general allegations of discrimination in an . . . IDHR charge are not a sufficient predicate for bringing any discrimination theory in federal court."); *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 565 (7th Cir. 2019) ("As a general matter, we do not consider a retaliation charge to be reasonably related to a discrimination claim."); *Flores*, 103 F. Supp. 3d at 950 ("Charges of retaliation are typically not like or reasonably related to charges of discrimination for purposes of the exhaustion requirement."); *Laramore v. City of Chi.*, No. 02 C 4220, 2004 WL 2033005, at *9 (N.D. Ill. Sept. 10, 2004) (holding that religious discrimination claim was beyond the scope of EEOC charge where there was no mention of religion anywhere in the text of the charge and plaintiff did not check the box indicating that he was discriminated against based on his religion).

Accordingly, the IHRA claims are all dismissed for this additional reason.

C. **Protected Activity**

Finally, Defendant argues that, even if Plaintiff's retaliation claim was within the scope of his IDHR charge, the claim fails because Plaintiff failed to allege a protected activity that occurred before the alleged adverse actions. In response, Plaintiff claims that "at all times" he "has alleged that after reporting racist remarks by coworkers to the foreman and supervisors at work . . . Defendant retaliated by letting him go." (Pl.'s Resp. at 3). But Plaintiff has not made these

allegations "at all times." In fact, the allegations are not included anywhere in Plaintiff's FAC. While the FAC does mention five complainants who were "listed" in the investigation of Plaintiff's conduct, Plaintiff does not allege that he complained about any of them to the foreman or supervisors as claimed in his response. (FAC ¶ 9). And it is well established that "Plaintiff cannot amend his complaint by raising new claims in response to the motion to dismiss." *Wooley v. Jackson Hewitt, Inc.,* 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008) (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989); *Berg v. BCS Fin. Corp.*, 372 F.Supp.2d 1080, 1091 n.8 (N.D. Ill. 2005)). Furthermore, as noted by Defendant, Plaintiff's filing of an EEOC charge cannot constitute protected activity because it occurred after the alleged adverse action. *See Wilson v. Bd. of Trustees of Cmty. Coll. Dist. 508*, No. 20 C 4604, 2024 WL 2209707, at *1 (N.D. Ill. May 16, 2024).

Accordingly, the retaliation claim is dismissed for this additional reason.

### III. Due Process

Plaintiff does not include a separate cause of action for violation of due process; however, Defendant contends that the FAC contains conclusory allegations regarding an alleged due process violation that should be dismissed. (*See* Def.'s Mem. at 9) (quoting FAC ¶ 27) ("Defendant violated Plaintiff's due process rights under the company's policy and its authority to impose discipline policy to Plaintiff and his counterparts."). In his response, Plaintiff did not address Defendant's arguments regarding his failure to allege a due process claim. Nevertheless, the Court considers the merits of Defendant's contentions.

#### A. Procedural Due Process

To plead a procedural due process claim, Plaintiff must allege (1) a cognizable property interest, (2) a deprivation of that interest, and (3) a denial of due process. *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (citing *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004)).

Here, Defendant argues that Plaintiff's claim fails because Plaintiff has not alleged (1) a property interest in continued employment or (2) that the state law remedies were inadequate. The Court agrees with Defendant.

A property interest in continued employment can be created in one of two ways: (1) by an independent source such as state law securing certain benefits; or (2) by a clearly implied promise of continued employment. *Id.* (citing *Phelan v. City of Chi.*, 347 F.3d 679, 681 (7th Cir. 2003)). Due process claims "in the context of public employment require an entitlement to continued employment; more specifically, the plaintiff must have 'a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause.'" *Id.* (quoting *Lee v. Cnty. of Cook*, 862 F.2d 139, 141 (7th Cir. 1988)). Upon review of the FAC, the Court determines that Plaintiff has failed to allege any facts from which a property interest can be conferred. *See Brooks v. City of Chi.*, No. 11-CV-2880, 2012 WL 13570, at *4 (N.D. Ill. Jan. 4, 2012) ("Because a property interest is required to state a cause of action for a Due Process violation and Plaintiff has failed to allege facts from which a property interest can be conferred, Plaintiff has failed to state a due process claim."). Additionally, Plaintiff did not respond to Defendant's argument or point the Court to any allegations supporting a property interest in continued employment. *See Clinton v. Famous Dave's of Am., Inc.*, No. 22 C 802, 2022 WL 3081762, at *1 (N.D. Ill. Aug. 3, 2022) ("Failure to respond to a motion to dismiss constitutes a waiver or concession.").

Next, the Court considers whether Plaintiff has alleged that the state law remedies were inadequate. "Where state law remedies exist, a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate." *Doherty v. City of Chi.*, 75 F.3d 318, 323 (7th Cir. 1996), amended (Mar. 28, 1996). Then, "[t]o determine whether a defendant provided sufficient procedural due process, a court must first determine

13

whether the claim is based on established state procedures or on random and unauthorized acts by state employees." *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479) (7th Cir. 2018) (citing *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010)). "A claim based on a deprivation from established state procedures requires more than simply the availability of post-deprivation procedures." *Id*. "The state's ability to predict when a deprivation will occur provides the state the ability to provide a pre-deprivation hearing." *Id*. "Conversely, a claim based on random and unauthorized acts by state officials does not have the same predictability, and thus, only requires a meaningful post-deprivation remedy." *Id*. "In this instance, the plaintiff must 'avail herself of state post-deprivation remedies or demonstrate that the available remedies are inadequate.'" *Id*. (quoting *Leavell*, 600 F.3d at 804).

Here, neither the FAC nor Plaintiff's response brief indicates whether Plaintiff brings procedural due process claims based on established state procedures or on random and unauthorized acts by state employees. And the sole paragraph that Defendant claims asserts a due process claim does not include enough detail to allow the Court to reasonably construe the claims one way or another. *See Leibas v. Dart*, No. 19 C 7592, 2020 WL 6134992, at *10 (N.D. Ill. Oct. 19, 2020) ("The pleadings, moreover, are so thin on factual allegations that the court cannot reasonably construe the claims one way or another."). Moreover, Plaintiff's complaint, as a whole, is devoid of any factual allegations about the state law remedies afforded to him or their potential inadequacies. Accordingly, on this record, the Court finds that Plaintiff has not adequately plead a procedural due process claim. *Id*.

      B.    <u>**Substantive Due Process**</u>

"Substantive due process protects against only the most egregious and outrageous government action." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019). Thus, to allege a

viable substantive due process claim, Plaintiff would need to allege conduct under color of state law that violated a fundamental right or liberty and was so arbitrary and irrational as to shock the conscience. *Nelson v. City of Chi.*, 992 F.3d 599, 604 (7th Cir. 2021). Here, Defendant correctly argues that Plaintiff has failed to allege that Defendant violated a fundamental right. *See id.* ("Employment, including public employment, is not a fundamental right."). Additionally, Defendant correctly argues that Plaintiff has not alleged any conduct that "was so arbitrary and irrational as to shock the conscience." *Id.* The sum of Plaintiff's allegations is that after he posted a picture holding a gun, he was placed on administrative leave and ultimately terminated. This conduct is far from conscience shocking. *See, e.g., Catinella v. Cnty. of Cook*, 881 F.3d 514, 519 (7th Cir. 2018) ("In short, [the plaintiff] claims that [the defendant] retaliated against him because he refused to cooperate in an investigation into public bidding and then trumped up his nonthreatening possession of a knife as a pretext to fire him. Even if unfair, this conduct is far from conscience shocking."). Accordingly, to the extent Plaintiff seeks to assert a substantive due process claim, Plaintiff has failed to adequately plead such a claim.

### IV. <u>Section 1981</u>

Plaintiff's Section 1981 claim was previously dismissed without prejudice by Judge Kendall. In his amended complaint, Plaintiff did not reassert a separate cause of action for violation of Section 1981. Defendant contends, however, that Plaintiff's complaint contains allegations related to the claim that should be dismissed.

As previously discussed, "Section 1983 provides 'the exclusive remedy' for Section 1981 claims against state actors." (Dkt. 34 at 6) (citing *Campbell v. Forest Pres. Dist. of Cook Cnty.*, 752 F.3d 665, 671 (7th Cir. 2014)). To state a claim under Section 1983, a plaintiff must allege that a municipality's "policy, custom, or act by a final decisionmaker caused him to suffer a

constitutional injury" or discrimination. *Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 966 (7th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694-95 (1978); *Campbell*, 752 F.3d at 667, 669)). Here, Defendant contends that Plaintiff has failed to plead facts to allow the Court to draw a reasonable inference that any other Black employee was discriminated against or that there was a widespread pattern or practice of discrimination within the DOA. The Court agrees.

In his initial complaint, Plaintiff alleged that Defendant "has demonstrated a history of targeting minority employees." (Compl. ¶ 27, Dkt. 1). Judge Kendall concluded that "this vague allegation does not give rise to a plausible inference that the City maintained a discriminatory policy or practice." (Dkt. 34 at 7). In his FAC, Plaintiff repeats the same vague allegation, FAC ¶ 25, and offers no additional facts to describe a discriminatory policy or procedure there or in his response to Defendant's motion to dismiss. Accordingly, the Court finds that to the extent that Plaintiff seeks to assert a Section 1981 claim, such a claim fails.

**V.     Punitive Damages**

The "Prayer for Relief" section of Count II of Plaintiff's FAC includes a request for punitive damages. (FAC at 6-7). Defendant argues that Plaintiff's request for punitive damages should be stricken and dismissed with prejudice because Defendant, as a public entity, is immune from punitive damages under Title VII and Section 1983. Plaintiff does not object and the case law supports Defendant's position. *See Passananti v. Cook Cnty.*, 689 F.3d 655, 677 (7th Cir. 2012) (Title VII complainant may not recover punitive damages from government, government agency, or political subdivision.); *Donald v. City of Chi.*, 539 F. Supp. 3d 912, 922 (N.D. Ill. 2021) ("[P]unitive damages are not available under Title VII or 42 U.S.C. § 1983 against a municipality or government."); *Adams v. City of Chi.*, 865 F. Supp. 445, 447 (N.D. Ill. 1994) ("Municipalities

16

are immune from punitive damages imposed under the civil rights laws."); *Bell v. City of Chi.*, No. 03 C 2117, 2004 WL 609309, at *2 (N.D. Ill. Mar. 22, 2004) ("Defendant City of Chicago is a municipality and, as such, cannot be held liable for punitive damages under Title VII."). Accordingly, Plaintiff's request for punitive damages is stricken.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss [46] is granted in its entirety. Plaintiff's Title VII ethnicity discrimination claim in Count I, all claims under the IHRA in Count II, and any separate causes of action for retaliation, due process violations, or Section 1981 violations are dismissed with prejudice. Furthermore, Plaintiff's claim for punitive damages is stricken. The only remaining claim in Plaintiff's First Amended Complaint is Title VII race discrimination. Defendant is ordered to file an answer to that claim by 7/15/24.

**ENTERED**:

**DATED**: June 24, 2024

LASHONDA A. HUNT
United States District Judge